UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

_____

| | |
|---|---|
| BRIAN B. MITCHELL | CIVIL ACTION NO. 04-1031-A |
| -vs- | JUDGE DRELL |
| CCA OF TENNESSEE, INC., ET AL. | MAGISTRATE JUDGE KIRK |

R U L I N G

     Hidden to the public eye in the abyss of prison life at Winn Correctional Center (hereinafter "WCC") in Winnfield, Louisiana during 2003 was a maelstrom of purportedly sordid conduct.  This suit addresses alleged effects of that conduct. Plaintiff, Brian B. Mitchell, is seeking damages for having been forced by one defendant, Captain Charlie Roberts, to engage in a specific act of oral sex. Mitchell is, according to evidence submitted to the Court, admittedly homosexual. The issue here, however, is the matter not of a homosexual relationship per se. Rather, we are here concerned with the matter of an alleged severe abuse of power.  Defendant, Roberts, was, at all times relevant, an officer at the prison. During a 2003 incident, he was a Captain of the Guard.  In a claimed similar event in 2001 he was a lieutenant.  In both alleged situations, he forced Mitchell to service him sexually, using the power of his office to set the time and circumstances where this would occur within the prison walls.

Before us now is a Motion for Summary Judgment filed on June 30, 2006 by two defendants: (1) CCA of Tennessee (hereinafter "CCA"), the privatized operator of WCC (which otherwise falls under the jurisdiction of the Louisiana Department of Corrections) and (2) Richard Stalder, Secretary of Corrections for the State of Louisiana.  (Doc. # 23).  Plaintiff, Brian Mitchell, opposes the motion. Under the circumstances, we find that the motion as to defendant, Stalder, is well founded and will be GRANTED, but as to CCA, it must be denied.

## BACKGROUND

Brian Mitchell is a former state prisoner of WCC, a Louisiana prison operated by CCA, a private prison management corporation.  On May 7, 2004, Mr. Mitchell filed a civil rights suit against Defendants:  CCA; Captain Roberts; and Richard Stalder, in his individual and official capacity as Secretary of the Department of Public Safety and Corrections (hereinafter "DPS&C").  (Doc. # 1). Plaintiff seeks compensatory damages as well as attorney's fees under 42 U.S.C. § 1983 and Louisiana state law for an incident which occurred on May 21, 2003, during which Captain Roberts allegedly sexually assaulted him.[1]  (Doc. # 1).

According to Mitchell's complaint, at approximately 3:55 p.m. on May 21, 2003, Captain Coleman, a guard at WCC, ordered him to visit the prison's "Count

---

[1]  In a separate criminal case filed in this Court in February of 2005, the Government brought a related action against Captain Roberts for the offenses of Deprivation of Rights and False Statements (Criminal Action No. 05-10007).  On July 14, 2006, Captain Roberts pled guilty to those charges and was later sentenced to serve a 72-month prison term.

2

Room."  (Doc. # 1).  Upon entering the Count Room, he was confronted by two of CCA's supervisors, Chief Maxwell and Chief Lucas, who ordered him to submit to a urine test.  Unable to urinate at that time, Mitchell was told to wait outside while the shift change occurred.  During the shift change, Captain Maxwell and Chief  Lucas left the Count Room and were replaced by Captain Roberts.  While departing, Captain Maxwell told Roberts to, "make sure that one tee-tees before she goes anywhere."  (Doc. # 1).

Shortly thereafter, Captain Roberts escorted Mr. Mitchell to a bathroom inside the Count Room and handed him a specimen cup.  After filling the cup with urine, Mitchell was told to place the cup on the bathroom sink.  Roberts then took the cup, exited the bathroom, and instructed Mitchell to wait for his return.  Several minutes later, Roberts came back and told Mitchell that, although his urine appeared  "clean," unless he performed oral sex on him he would be locked up for "dirty urine," *i.e.*, he would fail his drug test.  After Mitchell inquired whether he was joking, Captain Roberts slapped him in the face and said, "this isn't a joke."   (Doc. # 1).  Under compulsion, Mitchell dropped to his knees, unzipped Captain Roberts' pants, and performed oral sex on him until he reached orgasm. (Doc. # 1).  Mitchell then left the Count Room, and spit Captain Roberts' semen into his t-shirt.  (Doc. # 1).

Several weeks later on June 17, 2003, and in response to a complaint submitted to the FBI, Mr. Mitchell was interviewed at WCC by FBI Special Agent

3

Kenneth Klocke.  During their interview, Mitchell told Agent Klocke that, while Plaintiff was incarcerated at WCC, Captain Roberts had sexually assaulted him twice, first in December of 2001 and again on May 21, 2003.[2]  (Doc. # 32, exhibit A).  After detailing the 2003 encounter to Agent Klocke, Mitchell described the 2001 assault.

According to Agent Klocke's report, on or about December 12, 2001, during Plaintiff's incarceration at WCC's Cypress Housing Unit, Captain Roberts (who was a Lieutenant at that time) entered Mitchell's cell, placed him in handcuffs and shackles, and physically forced him into his office.  Once inside, Roberts ordered  Mitchell to perform oral sex on him.   (Doc. # 33, exhibit 1-A).  Roberts warned Mitchell that if he did not comply with the demand he would be placed in a cell with someone who would "hurt" him.  (Doc. # 33, exhibit 4).  Believing Roberts' threat to be credible, Mitchell, while remaining handcuffed, performed oral sex on Captain Roberts.  (Doc. # 33, exhibit 4).

Klocke notes that, while Mitchell did not make a report of the incident to WCC, he claims that he told Warden Todd and Chief Maxwell in April of 2003 that "he was being sexually harassed by Captain Roberts."  (Doc. # 33, exhibit 4).  In response to the complaint, however, Warden Todd told Plaintiff that he would be

---

[2] After the interview, Agent Klocke obtained the semen stained t-shirt from Mitchell and had it shipped to an FBI lab.  Subsequently, Dr. Sam Becktel of the FBI contacted Agent Klocke and informed him that the shirt tested positive for semen.  DNA tests confirmed the substance as belonging to Captain Roberts.

transferred back to the Cypress Housing Unit if he ever lied to one of his Captains again.  (Doc. # 33, exhibit 4).[3]

## ANALYSIS

**SUMMARY JUDGMENT STANDARD**

Rule 56(c) of the Federal Rules of Civil Procedure mandates that a summary judgment:

> shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file . . . together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c).  A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 447 U.S. 242, 249-50, 106 S. Ct. 2505, 2511 (1986). If the movant produces evidence tending to show there is no genuine issue of material fact, the nonmovant must then direct the Court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial.  Eason v. Thaler, 73 F.3d 1322, 1325 (5th Cir. 1996)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 321-23, 106 S. Ct. 2548, 2551-53 (1986)).  In the

---

[3] Defendants dispute the veracity of certain portions of Agent Klocke's report.  Specifically, Defendants have introduced into evidence affidavits of Warden Todd and Captain Maxwell stating that Mr. Mitchell did not notify or inform either of them of any alleged incident of a sexual or inappropriate nature involving Plaintiff and Captain Roberts in or around December of 2001.  (Doc. # 33, exhibits 2 & 3).  Additionally, Defendants have provided a copy of Mr. Mitchell's "incident statement" given during his interview with Warden Wilkinson.  In that written statement, taken the day after Agent Klocke's interview, Mitchell states, regarding the alleged 2001 sexual assault, "I never told any one because I did not think any one would believe me or even help me."  (Doc. # 33, exhibit 1-A).

analysis, all inferences are drawn in the light most favorable to the nonmovant. Herrera v. Millsap, 862 F.2d 1157, 1159 (5th Cir. 1989).  However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient to defeat a motion for summary judgment.  Brock v. Chevron U.S.A., Inc., 976 F.2d 969, 970 (5th Cir. 1992).

**FEDERAL CLAIMS**

Plaintiff's federal claims are brought pursuant to 42 U.S.C. § 1983.  That statute allows claimants to seek redress against any person who, under color of state law, deprives him or her of a constitutionally guaranteed right. See 42 U.S.C. 1983 (2006).  Claims brought under this statute are analyzed according to whether the defendant is an individual or a government entity.  See Monell v. Dep't of Social Services, 436 U.S. 658, 691-92, 98 S.Ct. 2018, 2036 (1978).  A § 1983 claim filed against an individual must be "based upon that person's *actual* involvement in the events giving rise to the deprivation."  Johnson v. Wilkinson County, No. 04-309, 2006 WL 455161, at *5 (S.D. Miss. Feb. 22, 2006).

**Defendant Stalder's liability**

Plaintiff sued Defendant Stalder under § 1983 in both his official capacity and his individual capacity as Secretary of the DPS&C.  As a state official, however, Stalder may not be sued in his official capacity.  See Will v. Michigan Dept. of State Police, 491 U.S. 58, 109 S.Ct. 2304 (1989); see also McGee v. Hunter, No. 03-378, 2004 WL 414807 at *2 (E.D.La. Mar. 03, 2004)("Because suits against

6

state officials in their official capacity are essentially suits against the State, and States are not 'persons' under the statutory language of 42 U.S.C. § 1983, a state official sued in [his] official capacity is also not a 'person' within the meaning of 42 U.S.C. § 1983").   Accordingly, Plaintiff's suit against Stalder in his official capacity as Secretary of the DPS&C will be dismissed with prejudice.

With regard to Plaintiff's claim against Stalder in his individual capacity, "state officials can be sued in their individual capacities and be held personally liable under § 1983 if it can be shown that the official, acting under color of state law, caused the deprivation of a federal right." Hafer v. Melo, 502 U.S. 21, 25, 112 S.Ct. 358, 362 (1991).  Here, Plaintiff alleges that Stalder, separately and/or acting in concert with Defendants, engaged in illegal conduct by depriving Mitchell of the rights, privileges and immunities secured to him by the Constitution of the United States under the Fourteenth Amendment.   More specifically, Plaintiff contends Stalder is liable under § 1983 for failing to implement policies and procedures to protect inmates from sexually predatory correctional officers, and for failing to staff WCC with adequately screened correctional officers. (Doc. #1). In response to these allegations, Stalder claims he is entitled to qualified immunity.

"The doctrine of qualified immunity serves to shield a government official from civil liability for damages based upon the performance of discretionary functions if the official's acts were objectively reasonable in light of the then

7

clearly established law."  Thompson v. Upshur County, 245 F.3d 447, 456 (5th Cir. 2001).  A two-part test is used in determining whether a § 1983 defendant is entitled to qualified immunity:  (1) whether the plaintiff has alleged a violation of a clearly established constitutional right; and, (2) if so, whether the defendant's conduct was objectively reasonable in light of the clearly established law at the time of the incident.  See Hare v. City of Corinth, 135 F.3d 320, 325 (5th Cir. 1988).

In the present case, Plaintiff has satisfied the burden of alleging a constitutional violation.  As mentioned, Mitchell asserts that Stalder's failure to implement policies and procedures to protect inmates from sexually predatory correctional officers, and his failure adequately to screen officers at WCC, directly and proximately resulted in the sexual assault.

As to the second prong, however, Plaintiff has failed to satisfy the burden necessary to defeat Stalder's defense of qualified immunity.  Defendants have provided a copy of CCA's Corporate and Facility Policy which mandates that:

> The Board, Employees and subcontractors are expected to abide by legal and contractual requirements, policies and procedures, training, post orders, and other directives to be honest, responsible, reliable, truthful, cooperative and economical in utilizing CCA and customer resources . . . .  It is the policy of the Company to comply fully with all applicable federal and state laws, rules and regulations governing its operations and to conduct its business in a manner that is consistent with the highest standards of business and professional ethics . . . .  It is your responsibility as an Employee of the Company to conduct yourself in a lawful and ethical manner at all times and in all aspects of your relationship and/or employment with the Company.

(Doc. # 23, exhibit A).   Captain Roberts signed acknowledgment forms on January 22, 2001 confirming that he understood and agreed to the standards set by CCA.   Furthermore, on that same day, Roberts acknowledged receipt and understanding of La. R.S. 1 4:134.1, Louisiana's prohibition against sexual conduct with persons confined in correctional institutions.[4] (Doc. # 23, exhibit C).  Plaintiff has not pointed to any specific deficiencies in CCA's stated policies or procedures, nor has he delineated any conduct of Stalder which could be construed as objectively unreasonable.   Stalder is therefore entitled to qualified immunity.

Plaintiff further alleges that Stalder is personally liable as a supervisory official of Captain Roberts.  With respect to supervisor's liability under § 1983, "the misconduct of the subordinate must be affirmatively linked to the action or inaction of the supervisor."  Southard v. Texas Board of Criminal Justice, 114 F.3d 539, 550 (5th Cir. 1997).  In other words, a supervisory official may be held liable, if his "action or inaction, demonstrates a deliberate indifference to a plaintiff's constitutionally protected rights."  Doe v. Taylor Indep. School Dist., 15 F. 3d 443, 453 (5th Cir. 1994).   Deliberate indifference is a stringent standard of fault, requiring proof that the official disregarded a known or obvious consequence of

---

[4]   La. R.S. 14:134.1(A) provides, in relevant part, "It shall be unlawful and constitute malfeasance in office for any person who is a law enforcement officer, officer of the Department of Corrections, or employee of a prison, jail, or correctional institution, to engage in sexual intercourse or any other sexual conduct with a person confined in a prison, jail or correctional institution."

his action.  See Board of the County Comm'rs of Bryan County, Okl. v. Brown, 520 U.S. 397, 410, 117 S. Ct. 1382, 1391 (1997).

Here, Mitchell has failed to submit summary judgment proof that Stalder's action or inaction is affirmatively linked to Captain Roberts' conduct.  Moreover, the record is devoid of any evidence to support the contention that Stalder acted with deliberate indifference.  Rather, it appears that Plaintiff relies merely on a theory of respondeat superior.  It is well known, however, that, under § 1983, supervisory officials are not vicariously liable for the actions of subordinates.  See Thompson, 245 F.3d at, 459.  For these reasons, Plaintiff's claim against Stalder in his individual capacity will be dismissed with prejudice.

**Defendant CCA's liability**

Before discussing CCA's liability, a brief review of the relevant law is necessary.   Municipalities and other local government units may be held liable under § 1983.  These governmental entities, however, like supervisory officials, "are not liable on a respondeat superior basis; that is, a municipality cannot be held liable simply by virtue of the fact that one of its employees violated a person's federal rights."  Monell, 436 U.S. at 691, 98 S.Ct at 2036.  For liability to attach, "the municipality itself must cause the violation through its policies."  Milam v. City of San Antonio, 113 Fed.Appx. 622, 625 (5th Cir. 2004); see also Monell, 436 U.S. at 694, 98 S.Ct at 2037("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or

acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983").

Likewise, a municipal corporation may not be held liable under § 1983 based on a respondeat superior theory.  See Monell, 436 U.S. at 694, 98 S.Ct at 2037 n. 58.   That is, while isolated unconstitutional actions by corporate employees will almost never trigger corporate liability, a municipal corporation may be held liable under § 1983 only if there is a  showing of official sanction or imprimatur  on the conduct or practice at issue.  Auster Oil & Gas, Inc. v. Stream, 835 F.2d 597, 602 n.3 (5th Cir. 1988).  Such a showing requires proof of three attribution elements.   Specifically, a municipal corporation performing a governmental function is liable under § 1983 if (1) there is a policymaker who could be held responsible, through actual or constructive knowledge, for enforcing a policy or custom that caused the claimed injury; (2) the corporation has an official custom or policy which could subject it to § 1983 liability; and (3) the claimant can demonstrate that the corporate action was taken with the requisite degree of culpability, and show a direct causal link between the action and the deprivation of federal rights.  See Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001); Victoria v. Larpenter, 369 F.3d 475, 482 (5th Cir. 2004)(citing Monell, 436 U.S. at 694, 98 S.Ct. at 2037).

Recently, in Rosborough v. Mgmt. & Training Corp., 350 F.3d 459, 461 (5th Cir. 2003), the Fifth Circuit extended municipal corporate liability under

§ 1983 to include private prison-management corporations and their employees. The court said:  "We agree with the Sixth Circuit and with those district courts that have found that private prison-management corporations and their employees may be sued under § 1983 by a prisoner who has suffered a constitutional injury."  Id.  In reaching its holding, the court concluded that, "[c]learly, confinement of wrongdoers – though sometimes delegated to private entities – is a fundamentally governmental function."  Id.  Like a municipal corporation, liability for a private prison-management corporation under § 1983 requires proof of the abovementioned attribution elements.  See Phillips v. Corrections Corp. of America, No. 02-766, 2006 WL 1308142 at *3 (W.D. La. May 10, 2006); see also Monell, 436 U.S. at 694, 98 S.Ct at 2037.  Thus, in the instant case, to extend liability to CCA under § 1983, we first must determine whether the three attribution elements are satisfied.

Beginning with the second attribution element, Plaintiff must show that CCA has an official custom or policy which could subject it to liability under § 1983.  See Monell, 436 U.S. at 694, 98 S.Ct at 2037.  While official policy is contained  typically in duly promulgated policy statements, ordinances or regulations, a policy may be evidenced by a custom, that is "a persistent, widespread practice of [corporate] officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents [corporate] policy."  See

12

Webster v. City of Houston, 735 F.3d 838, 841 (5th Cir. 1984).  Actions of officers or employees of a corporation do not render the corporation  liable under § 1983 unless they execute official policy as above defined.  See Id.

In the present case, Plaintiff alleges that CCA has a "custom" of ignoring inmates' complaints directed toward their employees.  To support this allegation, Plaintiff has provided competent summary judgment evidence, in the form of Agent Klocke's report (Doc. # 33, exhibit 4), that, in April of 2003, Mitchell complained to Warden Todd and Chief Maxwell that Captain Roberts was sexually harassing him.  The record further reveals that instead of reporting or investigating Mitchell's complaint, Warden Todd threatened him and accused him of lying.  In light of this record evidence, we find that a genuine issue of material fact exists as to whether CCA has an official custom of ignoring inmates who report constitutional violations committed by its employees.  As such, the second attribution element is met.

With regard to the third attribution element, Mitchell must demonstrate that the corporate action was taken with the requisite degree of culpability, and must show a direct causal link between the action and the deprivation of federal rights.  See Monell, 436 U.S. at 694, 98 S.Ct at 2037.  Stated differently, Plaintiff must show both corporate culpability and causation.  See Piotrowski, 237 F.3d at 578 n.17 (citing Snyder v. Trepangnier, 142 F.3d 791, 796 (5th Cir. 1998)).  "Culpability may be shown either through an unconstitutional official policy or

through a facially innocuous policy that was implemented with deliberate indifference to a known or obvious consequence that a constitutional violation would result." Olivas v. Corrections Corp. of Am., 408 F.Supp.2d 251, 255 (N.D. Tex. 2006); citing Piotrowski, 237 F.3d at 579.  To satisfy causation, a plaintiff must show that the policy in question is the "moving force" behind the violation. See Id.

Here, again, Warden Todd and Chief Maxwell's failure to report or investigate Mitchell's complaint of sexual harassment, if true, creates a genuine issue of material fact as to whether CCA maintained an official custom of ignoring prisoner complaints against their employees.  Moreover, proof of such a custom would suffice to show a direct causal link between CCA's policy and the deprivation of Plaintiff's federal rights.  That is, absent CCA's failure to report or investigate Mitchell's allegation of sexual harassment in April of 2003, the sexual assault on Plaintiff in May 2003 would not have likely occurred.  Both causation and culpability have thus been satisfied under the third element.

As to the first attribution element, there must be a policymaker who could be held responsible, through actual or constructive knowledge, for enforcing the policy or custom that caused the claimed injury.  As an assistant warden of WCC, Warden Todd enjoyed policymaking authority.  Warden Todd exhibited that authority, in April of 2003, when he immediately dismissed the veracity of Plaintiff's allegation that he had been sexually assaulted by Captain Roberts.  By

14

declining to report or investigate Plaintiff's claim, Warden Todd ostensibly implemented a policy of inaction on behalf of CCA. (Doc. # 33, exhibit 4). Chief Maxwell's complicity in Warden Todd's conduct further supports the conclusion that Warden Todd, at the time of being notified of Roberts' conduct, maintained policymaking authority for CCA. (Doc. # 33, exhibit 4). As a result of Warden Todd's inaction, Captain Roberts was permitted to isolate himself in the Count Room with Mr. Mitchell less than two months later, ultimately resulting in Roberts' second sexual assault. Plaintiff has therefore identified a policymaker who could be held responsible, through actual or constructive knowledge, for enforcing a policy or custom that caused Plaintiff's injury, and consequently, the first attribution element is satisfied. See Piotrowski, 237 F.3d at 579. Because all three attribution elements have been met, Plaintiff's § 1983 claim against CCA must survive summary judgment.

**STATE LAW CLAIMS**

Plaintiff asserts that Defendants are vicariously liable under La. Civ. Code art. 2320 for the alleged tortious actions of Captain Roberts. That article provides, in relevant part, "masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed." La. Civ. Code art. 2320 (2007).

**Defendant Stalder's Liability**

15

Article 2320 creates vicarious liability for "masters and employers" in certain circumstances.[5] Here, Plaintiff has provided no evidence that Stalder was the employer/master of Captain Roberts.  On the contrary, in his complaint, Plaintiff admits that Stalder is the duly appointed and serving Secretary of the DPS&C, an administrative division of Louisiana, and that Roberts was employed by CCA.  (Doc. # 1).  As such, Plaintiff 's state law claim against Stalder will be dismissed with prejudice.

**Defendant CCA's Liability**

Plaintiff asserts that CCA is vicariously liable for the tortious actions of Captain Roberts.  Under article 2320, an employer is liable for a tort committed by his employee if, at the time, the employee was acting within the course and scope of his employment.  See Orgeron v. McDonald, 639 So. 2d 224, 226 (La. 1994). "The particular facts of each case must be analyzed to determine whether the employee's tortious conduct was within the course and scope of his employment."  Baumeister v. Plunkett, 673 So. 2d 994, 997 (La. 1996).  An employer is not vicariously liable "merely because his employee commits an intentional tort on the business premises during work hours."  Scott v. Commercial Union Ins., 415 So. 2d 327, 329 (La.App. 2d Cir. 1982).  Rather, the

---

[5] Tests for determining master-servant/employer-employee relationships set out: selection and engagement; payment and wages; power of dismissal; and power of control.  See Johnson v. Maricle, 386 So. 2d 677 (La.App. 3d Cir. 1980).

employee must be acting within the ambit of his assigned duties and in furtherance of his employer's objectives for vicarious liability to attach.  Id.

In making this determination, a court should analyze the factors enumerated by the Louisiana Supreme Court in LeBrane v. Lewis.  These factors, commonly referred to as the LeBrane factors, include:  (1) whether the tortious act was primarily employment rooted; (2) whether the violence was reasonably incidental to the performance of the employee's duties; (3) whether the act occurred on the employer's premises; and (4) whether it occurred during the hours of employment.  LeBrane v. Lewis, 292 So. 2d 216, 218 (La. 1974).[6]

In the instant case, Defendants concede that the last two LeBrane factors are satisfied.[7]  Thus, CCA's liability will be based on our analysis of the first two LeBrane factors, namely:   whether the 2003 sexual assault was primarily employment rooted and/or reasonably incidental to the performance of Captain Roberts' duties.

---

[6] It is not necessary that all four factors be met to find liability.  Turner v. State, 494 So. 2d 1292, 1295 (La.App. 2d Cir. 1986).

[7] Captain Roberts' tortious conduct, that is, his sexual assault of Mitchell, occurred on CCA's premises during work hours. The record shows that Mitchell was assaulted by Captain Roberts on May 21, 2003, inside the Count Room at WCC.  Furthermore, the record evidence reveals that Captain Roberts was working at WCC at the time the assault occurred – sometime shortly after 4:00 p.m.

17

1.    Whether the 2003 sexual assault was reasonably incidental to the performance of Captain Roberts' duties

Defendants argue that the second  LeBrane factor is not met because the 2003 sexual assault was performed not in furtherance of CCA's objectives but, rather, was performed solely in furtherance of Captain Roberts' personal objectives. (Doc. #23). In support of their argument, Defendants correctly cite the Louisiana Supreme Court's ruling in Baumeister as setting forth the applicable standard for determining vicarious liability in Louisiana.

The Baumeister court held that a hospital was not vicariously liable for an alleged sexual assault committed by one of its supervisors upon a co-employee during working hours in the nurse's lounge of the hospital.  In analyzing the facts of the case, the court found that neither the first nor second LeBrane factors was met.  With regard to the second factor, the Baumeister court concluded that the supervisor's/attacker's actions were not reasonably incidental to the performance of his employment duties.  Baumeister, 673 So. 2d at 999.  In reaching this conclusion, the court noted that "a nursing supervisor's responsibilities do not include sexually oriented physical contact with a co-employee, and it was not foreseeable, from the perspective of the hospital, that such conduct would take place on working hours." Id.  Importantly, however, the court cited Samuels  v. Southern Baptist Hospital, 594 So. 2d 571 (La.App. 4th Cir. 1992) and noted that, had the hospital's patient been the victim rather than a co-employee, perhaps, a different result may have been warranted.  Id. at 999 n.2.  In doing so, the

18

Baumeister court elected to highlight a relevant consideration in determining whether the second LeBrane factor is satisfied, that is, the amount of control and authority granted to the employee/tortfeasor.

In Samuels, a hospital was held vicariously liable for the rape of a patient by one of its nursing assistants.  The court found that the hospital, although not negligent, was nonetheless vicariously liable for the tortious conduct of its nursing assistant.  Samuels, 594 So. 2d at 574.  In doing so, the court focused its analysis on the second LeBrane factor, noting that the scope of the risks attributable to an employer increases with the amount of authority and freedom of action granted to the servant in performing his assigned tasks.  See Samuels, 594 So. 2d at 573 (citing Emert v. Hartford Ins. Co., 559 So. 2d 467, 477 (La. 1990)). The court reasoned that, because ensuring a patient's well-being from others while the patient is helpless in a locked environment is both part of a hospital's normal business and part of the duties of a nursing assistant, the tortious conduct, although totally unauthorized by the employer and motivated solely by the employee's personal interest, was reasonably incidental to the performance of the  nursing assistant's duties.   Id.

Applying the Samuels court's rationale to the instant case, although totally unauthorized by CCA, Captain Roberts' sexual assault was reasonably incidental to the performance of his duties.  Like the nursing assistant/attacker in Samuels, Captain Roberts was granted a significant amount of authority and freedom of

19

action in performing his assigned tasks.  As a Captain of the Guard, Roberts had virtually unfettered discretion and authority over inmates.  Roberts used that authority and power granted to him by CCA to set the time and circumstances of his assault on Mitchell.  It easily follows that Captain Roberts' tortious conduct was reasonably incidental to the performance of his duties as a Captain of the Guard.

**2.      Whether the 2003 sexual assault was primarily employment-rooted**

Defendants claim that the 2003 sexual assault was not primarily employment-rooted as it was purely personal to Captain Roberts.  This is not the test used in making such a determination; rather, the dispositive question is whether the employee's actions were so closely connected to his employment duties that the risk of harm faced by the victim was fairly attributable to his employer.  See Turner v. State, 494 So. 2d 1292, 1296 (La.App. 2d Cir. 1986); see also Samuels, 594 So. 2d at 574.  Roberts' assault of Plaintiff was closely connected in causation to his employment duties.  Roberts lured Mitchell into the bathroom in his capacity as a prison guard captain.  Roberts used his position of authority over Mitchell to effect the sexual assault.  As such, Roberts' actions were closely connected to his employment duties so that the risk of harm faced by Plaintiff was fairly attributable to CCA, who placed Roberts in his capacity as a Captain of the Guard and in a position of authority and contact with Mitchell.

20

In summary, all of the <u>LeBrane</u> factors have been met in the instant case, and therefore, there exists, at a minimum, a genuine issue of material fact as to whether, under Louisiana law, CCA is vicariously liable for the tortious actions of Captain Roberts.  Accordingly,  Plaintiff's state law claims as to CCA must survive summary judgment.

## CONCLUSION

In summary, as to Defendant Stalder, both Plaintiff's federal and state law claims will be dismissed with prejudice.  With regard to Plaintiff's claims against CCA, however, both claims must survive summary judgment.

SIGNED on this 15th day of March 2007, at Alexandria, Louisiana.


Dee D. Drell
United States District Judge